

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:AAS/RMP/MAA
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 15, 2024

By ECF and E-mail

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Huawei Technologies Co., Ltd., et al.
               Criminal Docket No. 18-457 (S-3) (AMD)

Dear Judge Donnelly:

        The government respectfully submits this letter in opposition to the motion by defendants Huawei Technologies Co. Ltd., Huawei Device Co. Ltd., Huawei Device USA, Inc., and Futurewei Technologies, Inc. (collectively, the "Defendants") to downgrade the government's February 7, 2022 disclosure letter (the "Disclosure Letter") from "Attorneys' Eyes Only" ("AEO") to "Sensitive Discovery Material" ("SDM"), which would permit defense counsel to share the Disclosure Letter with the Defendants. (See ECF Nos. 430, 431 ("Def. Br.")[1].) Notwithstanding the Defendants' efforts to characterize this as a motion regarding the government's compliance with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, this is a straightforward issue regarding the appropriate treatment of discovery under the protective order entered in this case (see ECF No. 57) (the "Protective Order").

        For the reasons below, the government respectfully submits that the Disclosure Letter is properly designated as AEO under the Protective Order. Nevertheless, the government has offered to downgrade the Disclosure Letter from AEO to SDM three months prior to trial. The government respectfully submits that, for the reasons below, downgrading the Disclosure Letter at that time appropriately protects the interests of all parties, whereas the Defendants' motion seeking immediate downgrade of the Disclosure Letter poses unacceptable risks of obstruction and to the safety of third parties.

---

[1]     Citations to the Defendants' motion are to the page numbers in the unredacted version filed under seal, which differ slightly from the redacted version filed publicly.

I. Background

   A. The Protective Order

The Protective Order provides, in relevant part, that "[a]ny documents, material, or information may be designated Attorneys' Eyes Only Material only upon a good-faith belief by the government that designation as Sensitive Discovery Material provides insufficient protection to such materials." (ECF No. 57 ¶ 20.) As set forth below, the government possesses such a good-faith belief.

   B. The Disclosure Letter

The government designated the Disclosure Letter as AEO under the Protective Order and provided it to defense counsel on February 7, 2022.[2]

The Disclosure Letter provides information relating to ████████████████ ████████████████████████████████████████████████████████████████ each referenced document has been produced to the Defendants on a non-AEO basis and identified in the Disclosure Letter by Bates number. ████████████████████████ ████████████████

The Disclosure Letter does not identify ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (together, the "Protected Information"). ████████████

---

[2] The government respectfully submits that resolution of the Defendants' motion does not require the Court's review of the Disclosure Letter. However, to the extent the Court would like to review the Disclosure Letter, the government requests permission to provide it under seal, in hard copy to chambers.

[3] ████████████████████████████████████████████████████████████


████████████████████████████████████████ would pose significant risks regarding potential obstruction of the instant prosecution (the "Prosecution") and ███████ safety. As set forth below, the government's concerns in these regards are well-founded.

II. <u>The Government Properly Designated the Disclosure Letter as AEO</u>

The Disclosure Letter is properly designated as AEO because it contains sensitive information regarding ████████████████████████████ and because of the obstruction and witness safety risks associated with disclosure to the Defendants of that and related information.[4] The government's particularized showing below supports the AEO designation, and establishes a good-faith belief that an SDM designation would not adequately protect the government's compelling interests. Specifically, the government has a good-faith basis for not disclosing to the Defendants (as contrasted with defense counsel) information █████████████████████████████████████████████████████████████████████████████████████████████████████████████ Moreover, limiting the Defendants' access to such information until three months prior to trial ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

A. <u>The AEO Designation Protects Important Governmental Interests</u>

The government's concerns about the potential obstruction of the Prosecution and witness safety – including with respect to efforts by both the Defendants and the PRC government – are grounded in the history of this case.

---

[4] In an effort to resolve this matter without judicial intervention, the government offered to downgrade the Disclosure Letter from AEO to SDM three months prior to trial, which, as discussed below, the government submits is adequate time for the Defendants to have access to the contents of that letter. As defense counsel has noted, the parties have been able, through ongoing discussions, to resolve numerous discovery disputes without requiring judicial intervention. (See ECF No. 432 at 1.) Here, the government continued to engage with defense counsel regarding the Disclosure Letter designation in an effort to find a resolution acceptable to all parties, doing so as recently as May 2024. Defense counsel, however, advised that such a compromise was not acceptable and that counsel intended to file a motion on this issue imminently. In light of the discussions regarding this issue and defense counsel's representation that they soon thereafter planned to file a motion regarding the AEO designation, the government did not separately file an application with this Court, which – contrary to defense counsel's assertion (see Def. Br. at 2) – is permitted but not required under the Protective Order when the parties disagree whether an AEO designation is appropriate (see ECF No. 57 ¶ 20).

3

As a threshold matter, the PRC government has demonstrated a close relationship with defendant Huawei Technologies Co. Ltd. ("Huawei"),[5] as well as an acute interest in the Prosecution and a willingness to take actions that appear designed to impede the Prosecution. For example, following the arrest in Canada of co-defendant Wanzhou Meng, the former Chief Financial Officer of defendant Huawei, it was widely reported that the PRC government engaged in diplomatic efforts to free Meng and had arrested a number of Canadian citizens in apparent retaliation for Meng's arrest.[6] As another example, on April 25, 2020, The New York Times published an account of five former Huawei employees who were arrested by PRC authorities in December 2018 after participating in a group chat in which one former employee stated – less than two weeks after the government's initial indictment was unsealed alleging, among other things, that Huawei conducted illegal business activities in Iran – that he could "prove that Huawei sold [equipment] to Iran." See Raymond Zhong, Jailed Huawei Workers Raised a Forbidden Subject: Iran, N.Y. Times, Apr. 25, 2020. Two of the former Huawei employees reported to The New York Times that, within weeks, PRC authorities had arrested all five men. The former employees further reported that PRC authorities "questioned them about Iran and asked why they had been in contact with foreign news outlets, both topics they had discussed [in the group chat]." One of the former employees reported that he was told that he had "crossed a line" by discussing Huawei's Iranian business. The two former employees who spoke with The New York Times spent eight and three months in PRC custody, respectively, and expressed that the PRC authorities appear to have arrested them in part to stop them from speaking out about Huawei's activities in Iran. As a third example, the PRC government repeatedly has publicly criticized the Prosecution as politically motivated,[7] with the apparent intention of undermining the integrity of the Prosecution.

---

[5] For example, the PRC government seemingly leveraged its ability to supply COVID-19 vaccinations to secure significant business advantages for Huawei in Brazil as part of so-called "vaccine diplomacy" through which Brazil obtained desperately needed COVID-19 vaccines. See, e.g., Ernesto Londoño and Letícia Casado, Brazil Needs Vaccines, and China Is Benefiting, N.Y. Times, Mar. 16, 2021.

[6] See, e.g., Echo Xie, China Says Release of Huawei Executive Meng Wanzhou Was Top Priority in Talks with US, S. China Morning Post, Oct. 15, 2022, available at https://www.scmp.com/news/china/diplomacy/article/3196082/china-says-release-huawei-execut ive-meng-wanzhou-was-top (last visited July 1, 2024); Zhou Xin, Beijing Blames Canada for Huawei Arrest and Threatens 'Grave Consequences for Hurting Feelings of Chinese People', S. China Morning Post, Dec. 9, 2018, available at https://www.scmp.com/news/china/diplomacy/article/2177091/beijing-blames-canada-huawei-arrest-and-threatens-grave (last visited July 1, 2024); Anna Fifield, Canadian Analyst Held in China Is Kept in a Cell With Lights Always On, Wash. Post, Dec. 21, 2018; Anna Fifield and Jeanne Whalen, Canadians Detained in China After Huawei Arrest Have Now Spent a Year in Custody, Wash. Post, Dec. 10, 2019.

[7] See, e.g., Remarks by Hua Chunying, PRC Foreign Ministry Spokesperson, Foreign Ministry Spokesperson Hua Chunying's Remarks on Meng Wanzhou's Return to China, PRC Embassy in U.S., Sept. 25, 2021, available at http://us.china-embassy.gov.cn/eng/fyrth/202109/t20210925_9574476.htm (last visited July 5, 2024); Remarks by Wang Wenbin, PRC Foreign Ministry Spokesperson, Foreign Ministry Spokesperson Wang Wenbin's Regular Press

▮▮▮▮▮▮ The PRC government's efforts to impede the Prosecution can be expected to continue – and likely escalate – as motion practice progresses and trial nears. In addition, as described below, the government is aware of multiple examples of the Defendants themselves attempting to obstruct the Prosecution.[8]

      1.    The AEO Designation Is Appropriate Given Obstruction Efforts

The Defendants ▮▮▮▮▮▮ have engaged in repeated, pervasive, and prolonged efforts to obstruct the Prosecution, including by interfering with potential government witnesses.

      a)    Scheme to Obstruct Grand Jury Investigation by Relocating Witnesses

As the Court is aware, the third superseding indictment in this case charges Huawei and Huawei Device USA with conspiring to obstruct justice based on their efforts to obstruct, influence, and impede the grand jury investigation underlying the Prosecution. (See ECF No. 126 ¶¶ 87 128.) As alleged in that indictment, after learning of the U.S. government's criminal investigation of Huawei and its affiliates, Huawei and Huawei Device USA undertook efforts to send potential witnesses out of the United States and to destroy evidence. (See id. ¶ 87.)

Having already evinced an intent to obstruct justice in this case by moving out of the United States witnesses with relevant knowledge and destroying relevant evidence, it is reasonable to infer that, were the Defendants provided with the Protected Information, the Defendants ▮▮▮▮▮▮

      b)    ▮▮▮▮▮▮

---

Conference on August 26, 2021, PRC Embassy in U.S., Aug. 26, 2021, available at http://us.china-embassy.gov.cn/eng./fyrth/202108/t20210826_9016583.htm (last visited July 5, 2024); Remarks by Lu Kang, PRC Foreign Ministry Spokesperson, *Foreign Ministry Spokesperson Lu Kang's Remarks on the Canadian Side's Obstinately Moving Forward the So-called Judicial Process of Extradition Against Chinese Citizen Meng Wanzhou*, PRC Embassy in U.S., Mar. 2, 2019, available at https://www.mfa.gov.cn/mfa_eng/xwfw_665399/s2510_665401/2535_665405/2019 03/t20190302_696954.html (last visited July 5, 2024).

    [8]    The Defendants' assertion that ▮▮▮▮▮▮





■■■■■■■■■■■■■■■■■■■■■■■■■■

- ■■■■■■■■■■■■■■■■■■■■■■■■

- ■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■ further demonstrating the significant risk of sharing with the Defendants ■■■■■

c) ■■■■■■■■■■■■■■■■■■■■■■■■

8

███ yet further demonstrates the substantial danger of sharing with the Defendants ███

---

13 ███



2. The AEO Designation Is Appropriate Given Witness Safety Concerns

████████████ are consistent with the PRC government's well-established use of threatening and coercive tactics in furtherance of its objectives. Indeed, the U.S. Department of Homeland Security has warned that the PRC pursues – and likely will continue to pursue – transnational repression activity in the United States, thereby undermining U.S. laws, norms, and individuals' rights. See Office of Intelligence and Analysis, U.S. Dep't of Homeland Security, "Homeland Threat Assessment: 2024," available at https://www.dhs.gov/sites/default/files/2023-09/23_0913_ia_23-333-ia_u_homeland-threat-assessment-2024_508C_V6_13Sep23.pdf at 7 (last visited June 30, 2024). For example, as part of the PRC's "Operation Fox Hunt" initiative, the PRC government has sought to repatriate PRC nationals living outside of the PRC using threats, intimidation, coercion, and other tactics – including threatening both the U.S.-based and PRC-based relatives of the PRC nationals whose repatriation is sought. See, e.g., United States v. Hu, et al., No. 21-CR-265 (E.D.N.Y.) (PKC) (eleven defendants charged[15] – with four convicted and others at-large – of acting as illegal agents of PRC government in connection with multi-year scheme in which two PRC nationals living in United States and various U.S.-based and PRC-based family members were threatened, including through threats to imprison relatives in the PRC, in order to coerce the nationals' repatriation).[16] Similarly, the PRC government has engaged in a

---

[14] ████████████████████████████████████

[15] Certain of these defendants were charged in related cases. See United States v. Rong, No. 21-CR-112 (E.D.N.Y.) (PKC); United States v. Jin, No. 21-CR-313 (E.D.N.Y.) (PKC).

[16] See also United States v. An, et al., No. 22-CR-460 (E.D.N.Y.) (KAM) (six defendants charged – with one convicted and others at large – of conspiring to and/or acting as illegal agents of PRC government in connection with multi-year scheme in which PRC national living in United States and various U.S.-based and PRC-based family members were threatened in order to coerce the national's repatriation); United States v. Sun, No. 22-MJ-1711 (S.D.N.Y.) (charging at-large PRC national with conspiring to and acting as illegal agent of PRC government in connection with multi-year scheme in which PRC nationals living in United States and various

10

broad and far-reaching campaign to silence individuals perceived as threats to or critics of the PRC, through the use of threats, intimidation, coercion, and other tactics against those individuals and their family members. See, e.g., United States v. Jin, No. 20-MJ-1103 (E.D.N.Y.) (RER) (charging at-large PRC national with participating in scheme directed by PRC government to censor political and religious speech, as part of which PRC government used information provided by defendant to retaliate against and intimidate PRC-based individuals and family members, including by temporarily detaining one such individual).[17]



The AEO designation therefore is warranted in order to protect the safety of ▮▮▮▮

B.  **An SDM Designation Would Not Adequately Protect the Government's Interests**

Providing the Protected Information to the Defendants, even on an SDM basis, would impermissibly heighten the risk of obstructive conduct by the Defendants and PRC government actors with respect to ▮▮▮▮. Given the simple nature of the information at

---

PRC-based family members were threatened in order to coerce the nationals' repatriation, including by detaining pregnant PRC-based relative).

[17] See also United States v. Lin, No. 22-MJ-251 (E.D.N.Y.) (MMH/JRC) (charging at-large PRC intelligence officer with participating in scheme to disrupt U.S. political campaign of individual who had been student leader of pro-democracy demonstrations in Tiananmen Square, including by physically attacking the candidate); United States v. Wang, et al., No. 22-CR-230 (E.D.N.Y.) (DC) (charging U.S. citizen and four at-large PRC intelligence officers with conspiring to and/or acting as illegal agents of PRC government in connection with scheme to obtain information about specific dissidents, with at least one dissident about whom such information was provided to the intelligence officers subsequently arrested by PRC government); United States v. Yunpeng, et al., No. 23-MJ-334 (E.D.N.Y.) (SJB) (charging 34 at-large PRC police officers with participating in scheme targeting PRC dissidents in United States, through campaign of threats, harassment, and intimidation, including online harassment and threats, such as directing that death threats be made against particular dissident); United States v. Lu, et al., No. 23-CR-316 (E.D.N.Y.) (NRM) (charging two defendants with conspiring to act as illegal agents of PRC government in connection with operation of illegal overseas police station in New York, in order to monitor and intimidate PRC dissidents and others); United States v. Liu, et al., No. 22-CR-311 (E.D.N.Y.) (LDH) (charging five individuals – one of whom pleaded guilty to acting as illegal agent of PRC government – with participating in scheme directed by PRC government to target PRC dissidents living in United States, as part of which defendants illegally obtained information which they used to target and harass the dissidents).

issue, once the Defendants learn the information (which they readily could memorize), for all practical purposes, it will be extraordinarily difficult to regulate what the Defendants do with the information. And for the reasons above, there is a very significant risk that, once provided with the information, the Defendants will try to use it to tamper with the government's case. ■■■ Moreover, though limiting disclosure of voluminous or complicated discovery to a particular time and place generally reduces the risks of witness tampering or other obstruction, such benefits are far less likely when dealing with basic information, as here.

Further, contrary to defense counsel's contention (see Def. Br. at 7), it is of no moment that the government has determined that the SDM designation is sufficient to protect other sensitive information. The information the government designated as SDM (e.g., confidential financial information) differs in kind from the information here designated as AEO, such that different treatment is warranted.

Put simply, the only way to adequately protect the government's compelling interests regarding the Disclosure Letter is to limit disclosure of the Protected Information to defense counsel until shortly before trial, when ■■■ and to protect against potential obstructive efforts. Thus, designating the Disclosure Letter as SDM, and thereby permitting disclosure to the Defendants, necessarily would not be adequate to protect the government's interests.

C. The Government's Concerns Are Not Outweighed by Any Purported Prejudice to the Defendants

Defense counsel's purported concerns about their ability to investigate and prepare a defense without sharing the Disclosure Letter with the Defendants (see Def. Br. at 4-5) are unavailing.

Given the information available to the Defendants in discovery that is not designated as AEO – including ■■■ – the Defendants have more than sufficient information to conduct a meaningful investigation and to prepare their defense. In fact, defense counsel have acknowledged that ■■■ Significantly, the AEO designation does not prevent defense counsel or the Defendants themselves ■■■ Rather, the AEO designation merely prevents defense counsel from sharing with the Defendants the Protected Information, which is specific and narrow.

12

Thus, unlike in cases where the government has entirely withheld the identities of individuals with potentially relevant information, discussed below, the narrowly tailored AEO limitations here do not materially impede either the defense's ability to investigate and prepare the defense or the Defendants' own abilities to assist with their defense.

Moreover, the Defendants' various arguments that defense counsel and the Defendants will not have adequate time to investigate and prepare their defense if the AEO designation is not modified until three months prior to trial (see Def. Br. at 4-5) each fail. First, defense counsel and the Defendants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ – just as they have been able to do at any point since the government provided the Disclosure Letter two years ago. It is irrelevant whether defense counsel believes the Disclosure Letter contains "highly valuable information" and "potential leads" (see id. at 4) because, even without that assessment, they are permitted to conduct such investigation. Second, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ there is nothing that prevents the Defendants from seeking from the PRC government any authorizations the Defendants believe appropriate to comply with PRC laws and regulations regarding the Defendants' use of such evidence or testimony in U.S. proceedings.[18] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Further, downgrading the Disclosure Letter from AEO to SDM three months prior to trial enables defense counsel adequate time to consult with the Defendants regarding the specific contents of the Disclosure Letter, particularly if the defense has availed itself of the broad ability to conduct related investigation in the meantime. That also is adequate time for the Court to adjudicate any motions in limine relating to the Disclosure Letter. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (See ECF No. 65 (protective order granting delayed disclosure of certain discovery pursuant to Federal Rule of Criminal Procedure 16(d)(1)).)

Thus, the Defendants have not established that the Disclosure Letter's AEO designation substantially prejudices the defense's ability to meaningfully investigate and prepare a defense, nor that any purported prejudice outweighs the government's specific and articulable concerns.

D. The Government Has Established Good Cause to Justify the Disclosure Letter's AEO Designation

Contrary to the Defendants' contention (see Def. Br. at 7), the government has made the requisite showing to support the Disclosure Letter's AEO designation. As set forth above, the government has established good cause in support of its AEO designation and has made

---

[18] In fact, on July 12, 2024, the government sent defense counsel a letter requesting that, in an effort to avoid unnecessary trial delays, the Defendants promptly seek all appropriate authorizations under PRC laws and regulations for any potential PRC evidence or witness testimony that the Defendants may seek to introduce at trial. (See ECF No. 441.)

a particularized showing, citing to specific and substantiated concerns, that disclosure to the Defendants of the Disclosure Letter could cause potential harm.

III. The AEO Disclosure Satisfies Any Obligations Under Brady and Its Progeny

As a threshold matter, the government stated in the Disclosure Letter that the government does not believe that the information set forth in the Disclosure Letter constitutes Brady material, but that it nevertheless was providing the information to defense counsel – long before trial in this case had been scheduled – in an abundance of caution. See, e.g., United States v. Bagley, 473 U.S. 667, 682 (1985) (Brady requires disclosure only of evidence that is both favorable to the accused, and material either to guilt or punishment; evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different); Kyles v. Whitley, 514 U.S. 419, 435 (1995) (Brady violation occurs only where government suppresses evidence that "could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict"). The Court, however, need not resolve whether the information in the Disclosure Letter constitutes Brady because, for the reasons below, the AEO disclosure here satisfies the government's disclosure obligation under Brady and its progeny.

As the Second Circuit has explained, "[i]t is well settled that evidence is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of that evidence." United States v. Orena, 145 F.3d 551, 558 (2d Cir. 1998) (citation omitted; emphasis added). Consistent with that principle, district courts have held that the government's Brady obligation is satisfied by AEO disclosures. For example, in United States v. Cobb, 544 F. Supp. 3d 310 (W.D.N.Y. 2021), the court implicitly found that providing Brady information on an AEO-basis satisfied the government's obligations under Brady and provided defense counsel with adequate ability to investigate the Brady information. There, the court found that the names of certain tipsters constituted Brady, such that it was not appropriate to require the defendant's counsel to wait until close to the time of trial to be able to investigate reports by those tipsters. See id. at 330. However, the court noted that it was sensitive to the government's expressed safety concerns, and accordingly required the government to produce the identities of the tipsters on an AEO-only basis until further order of the court. See also United States v. DeLeon, No. 15-CR-4268, 2017 WL 2271427, at *68 (D.N.M. Mar. 8, 2017) (ordering government to disclose identity of testifying informant on AEO- and investigator's eyes-only basis, where defendant made sufficient showing that informant's identity must be disclosed under Brady and government expressed concerns about informant's security; collecting cases with similar holdings).

The Classified Information Procedures Act ("CIPA") framework governing classified discovery is instructive. Under CIPA, it is well established that the government may satisfy its discovery obligations by producing classified discovery – including discovery that may constitute Brady – solely to defense counsel possessing the requisite classified clearance. That is, in the CIPA context, the government's Brady obligations may be satisfied by disclosure to cleared defense counsel notwithstanding that the discovery at issue will never be shared with the defendant. For example, in United States v. Muhanad Mahmoud Al Farekh, No. 15-CR-268

14

(BMC), 2016 WL 4444778 (E.D.N.Y. Aug. 23, 2016), aff'd, 956 F.3d 99 (2d Cir. 2020), Judge Cogan authorized production to defense counsel alone of classified summaries – ███████ ███████████████████████████████████████ – as substitutions for classified materials that the government believed might contain exculpatory and impeachment evidence that otherwise would need to be disclosed under Brady. See id. at *1, 3. The court recognized that when classified materials contain matter that is exculpatory or helpful to the defense, the government's privilege must "give way" to a "defendant's right to present a meaningful defense," but explained that a court may permit the government to produce that information in a form that will preserve its sensitivity. Id. at *2. The court accordingly "f[ound] that providing these summaries to defendant's counsel satisfies the Government's discovery obligations while at the same time protecting national security." Id. at *3.[19] Here, the government recognizes that treatment of the Disclosure Letter is not evaluated under the CIPA framework (and the government has not asserted a national security interest), but the government respectfully submits that the underlying principle – that the government's Brady obligations can be satisfied by disclosing the relevant information on an AEO-basis – nonetheless applies.

Moreover, the cases on which the Defendants rely (see Def. Br. at 6) are unavailing. As relevant to this motion, United States v. Burgess, No. 18-CR-373 (RJS), 2018 WL 11211501 (S.D.N.Y. Sept. 21, 2018), and United States v. Baker, No. 20-CR-288, 2020 WL 4589808 (S.D.N.Y. Aug. 10, 2020), stand for the unremarkable proposition that the defendant has a personal interest in assisting with his own defense, and that restrictions on that right should be appropriately tailored.[20] The government here recognizes the Defendants' personal interests in that regard and respectfully submits that, under the circumstances, the AEO designation is appropriately tailored

---

[19] See also United States v. Babafemi, No. 13-CR-109 (JG), 2014 WL 1515277, at *1 (E.D.N.Y. Apr. 18, 2014) (authorizing production to defense counsel only of classified summaries that government believed may contain exculpatory and impeachment evidence that must be disclosed under Brady and its progeny, and expressly recognizing the classified summaries would remain unavailable to defendant personally); United States v. Medunjanin, No. 10-CR-19 1 (RJD), 2012 WL 13186383 (E.D.N.Y. Feb. 22, 2012) (authorizing production to defense counsel alone of classified summaries that court determined contained information discoverable under Brady, expressly recognizing the classified summaries and information therein could not be shared with defendant personally, and finding that such "disclosure satisfies the government's discovery obligations under Brady").

[20] In Baker, the parties agreed that the incarcerated defendant would only have access to discovery containing sensitive witness information in the presence of defense counsel, but the court rejected the government's argument that the defendant should not also have access outside of counsel's presence to versions of the discovery redacting the sensitive witness information. That is, the court did not find that the defendant was entitled to additional information beyond what the government proposed disclosing, as the Defendants here urge. Rather, the court only made findings as to the appropriate format of the disclosure proposed by the government.

In Burgess, the court found that the government had failed to show how its proposed restrictions on the treatment of certain discovery (including delaying disclosure) would address purported witness safety concerns. Here, the government has made such a showing.

to protecting the government's compelling interests without materially impeding the Defendants' abilities to assist with the preparation of their defense.

In addition, as the Defendants note, Roviaro v. United States, 353 U.S. 53 (1957), held that the district court erred by permitting the government to withhold from disclosure the identity of an informant pursuant to the so-called "informer's privilege" where the informant's identity or contents of his communications is "relevant and helpful to the defense." (See Def. Br. at 6.) Here, the government is not withholding any such information – the Protected Information was provided to defense counsel. And Roviaro says nothing remotely suggesting that an AEO disclosure would be inadequate to satisfy the government's disclosure obligation. In fact, DeLeon – where the court permitted an AEO disclosure of unclassified Brady information, as described above – cited extensively to Roviaro. See DeLeon, 2017 WL 2271427, *65 (analyzing Roviaro and finding that, although Roviaro did not apply to testifying confidential informants, upon a satisfactory defense showing, the government's Brady obligations also defeat the informer's privilege with respect to testifying confidential informants, and finding that the government's Brady obligations were satisfied by disclosure to attorneys and investigators only). Further, courts in this Circuit routinely cite to Roviaro's "relevant and helpful to the defense" standard[21] in permitting disclosure only to cleared counsel (i.e., not to the defendant) of classified information that constitutes Brady or is otherwise relevant and material to the defense, in satisfaction of the government's discovery obligations. See, e.g., Al Farekh, 2016 WL 4444778, at *2. DiBlasio v. Keane, 932 F.2d 1038, 1043 (2d Cir. 1991), another case to which the Defendants cite (see Def. Br. at 6), similarly held only that due process required that, under the circumstances, an informant's name be disclosed to the defense – not that such obligation would not be satisfied by an AEO disclosure.

Thus, even if the information in the Disclosure Letter were to constitute Brady, the AEO disclosure here satisfies the government's disclosure obligation under Brady and its progeny. That is because, first, by virtue of disclosure to defense counsel, the information has not been suppressed, and second, the relevant information has been disclosed in a manner that permits its effective and timely use by the defense in preparing for and at trial, including by enabling the Defendants to assist in preparation of their own defense. Moreover, for the reasons above, even if the Disclosure Letter were to constitute Brady, there is no merit to the Defendants' contention that the information has not been produced in a timeframe that allows for its effective use at trial (see Def. Br. at 4). Indeed, the Disclosure Letter was produced almost four years before trial in this case is scheduled to begin. Any Brady argument regarding the adequacy of the Disclosure Letter based on its AEO designation accordingly fails.

IV.    Request to Seal and Submit Certain Information Ex Parte

The government respectfully requests to file a redacted version of this brief on the public docket. The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal. See, e.g., United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (noting "requirement that district courts avoid sealing judicial documents in their entirety

---

[21]    In the Second Circuit, the standard is articulated as "helpful or material to the defense." See United States v. Aref, 533 F.3d 72 (2d Cir. 2008).

16

unless necessary"); Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). However, disclosing the contents of this letter to the Defendants and the public potentially could result in efforts to obstruct the Prosecution ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and could jeopardize the safety of witnesses. See United States v. Amodeo, 71 F.3d 1044, 1050-52 (2d Cir. 1995) (recognizing reasons justifying sealing include preserving confidentiality of sources, protecting witnesses, and preventing interference with an investigation). As these facts constitute a sufficient basis for the Court to make the "specific, on the record findings" necessary to support sealing, Lugosch, 435 F.3d at 120, the government respectfully requests that the Court record those findings.

The government further requests to submit certain of the information above ex parte given that the information variously relates to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See, e.g., United States v. Loera, No. 09-CR-466 (BMC), 2017 WL 2821546, at *2 (E.D.N.Y. June 29, 2017) (holding that ex parte submissions were appropriate when subject matter included "cooperating witnesses, confidential sources, ongoing investigations, or law enforcement techniques").

The government will provide defense counsel with a version of this filing that redacts the ex parte information but includes information that is not being filed publicly; except with respect to the information in Part II.A.1.b ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") and Exhibit A, given the contents, the government will provide the non-public information to defense counsel on an AEO basis.

V. Conclusion

For the foregoing reasons, the government respectfully requests that the Court deny the Defendants' motion and grant the government's requests to file certain aspects of this letter ex parte and under seal.

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

By: /s/
Alexander A. Solomon
Meredith A. Arfa
Robert M. Pollack
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering and
Asset Recovery Section, Criminal Division,
U.S. Department of Justice

Laura Billings
Taylor Stout
Jasmin Salehi Fashami
Trial Attorneys


JENNIFER KENNEDY GELLIE
Executive Deputy Chief,
Counterintelligence and Export Control
Section, National Security Division,
U.S. Department of Justice

Christian J. Nauvel
Yifei Zheng
Monica Svetoslavov
Ahmed Almudallal
Trial Attorneys

Cc: Clerk of the Court
Counsel of Record