# SIDLEY                                    JENNER&BLOCK LLP

August 15, 2024

**Via ECF**                                                                REDACTED

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Huawei Technologies Co. Ltd., et al.*, No. 1:18-cr-457 (S-3) (AMD) (CLP), Reply in Support of Motion to Downgrade February 2022 *Brady* Letter (Dkt. 430 (public), 431 (sealed))

Dear Judge Donnelly and Judge Pollak:

      We write on behalf of Defendants Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA, Inc., and Futurewei Technologies, Inc. (collectively, "Huawei") in further support of Huawei's Motion to downgrade the government's February 7, 2022 *Brady* Letter from Attorneys' Eyes Only ("AEO") to Sensitive Discovery Material ("SDM").

      As described in Huawei's Motion, the February 2022 *Brady* Letter ███████████████ ███████████████████████████████████████████████████████████████ including the central allegation that ███████████████████████████████████████████████ █████████████. Specifically, the February 2022 *Brady* Letter describes ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. *See also infra* § I.A.

      The Court need not take Huawei's word for this. It is there in the February 2022 *Brady* Letter itself. But inexplicably, the government has resisted Huawei's request that the government supply a copy of that Letter to the Court, *see* Mot. 2 n.2 (requesting that the government provide the Court with a copy of the Letter), asserting instead that the Court can resolve this Motion without ever reviewing the Letter itself. *See* Opp. (Dkt. 446), at 2 n.2. At the same time, the government continues to deny that the February 2022 *Brady* Letter contains *Brady* material at all, instead claiming the disclosure was made only "in an abundance of

United States v. Huawei Technologies Co. Ltd., et al.
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
August 15, 2024
Page 2

caution," but that the Court "need not resolve whether the information in the Disclosure Letter constitutes *Brady*." Opp. 14. However, the fact the Letter contains *Brady* material is at the *heart* of this dispute. Because the Letter contains *Brady* material, the Defendants themselves must be made aware of the information to use it effectively at trial. The government's generalized allegations of risk cannot overcome Huawei's constitutional right to timely disclosure of the information, and disclosure to counsel alone does not discharge the government's obligations.

For the reasons described below, Huawei respectfully requests that the Court order that the government promptly de-designate the February 2022 *Brady* Letter from AEO to SDM, ███████████████████████████████████████████████

## I. The Government's Ongoing Failure to Disclose the February 2022 *Brady* Letter to the Defendants Violates *Brady*.

The government's obligations with respect to *Brady* material were clearly set out in Judge Donnelly's February 18, 2021 order: "The prosecution shall disclose such information to the defense promptly after its existence becomes known to the prosecution so that the defense may make effective use of the information in the preparation of its case." Dkt. 261. Despite this admonition, the government waited nearly a year after that order to supply the information in the February 2022 *Brady* Letter to defense counsel, and it has spent the ensuing two-and-a-half years resisting any effort to allow the information to be used by the Huawei Defendants. This is improper.

### A. The February 2022 *Brady* Letter Discloses *Brady* Information.

The government insists that its February 2022 "Disclosure Letter" does not contain *Brady* material, Opp. 14, yet resists Huawei's request to file a copy of the Letter so that the Court may decide that question for itself, Opp. 2 n.2. Because the exculpatory nature of the February 2022 *Brady* Letter is critical to why the Letter must be promptly disclosed, Huawei provides the following summary of just some of the exculpatory information revealed in the February 2022 *Brady* Letter.[1]



---

[1] The Protective Order prohibits Huawei from filing the AEO Letter directly with the Court. *See* Protective Order (Dkt. 57) ¶ 18. Defense Counsel was permitted by the government to include this description of the contents of the Letter only after extensive negotiations, and with substantial additional restrictions on how this document can be distributed and stored.



United States v. *Huawei Technologies Co. Ltd., et al.*
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
August 15, 2024
Page 4



**B.** **Disclosure of the February 2022 *Brady* Letter to Counsel Only Is Not Sufficient Under *Brady*.**

As support for its position that disclosure to counsel alone is sufficient to satisfy its *Brady* obligation, the government primarily cites *United States v. Orena* as holding that the *Brady* obligation is met when "the defendant *or his attorney* either knew, or should have known of the essential facts permitting him to take advantage of the evidence." Opp. 14 (quoting 145 F.3d 551, 558 n.4 (2d Cir. 1998)). That generic language says nothing about what the government is trying to do here. Both *Orena* and the case that it cites (*United States v. Torres*, 129 F.3d 710, 717 (2d Cir. 1997)) merely recite the general rule that there is no *Brady* violation when the defendant's attorney knows or should know of the exculpatory information. But the idea that providing exculpatory information to a lawyer is sufficient to discharge a *Brady* obligation necessarily contemplates that the lawyer could and would *disclose the information to his or her client*. Neither case suggests that it would be proper for a lawyer to learn of exculpatory information and conceal it from his client, or that *Brady* is satisfied when the government discloses exculpatory material to a defense lawyer and then orders him not to use it or share it with his client.

The government's sole additional authority (at 14) consists of two out-of-District cases permitting informants' names to be treated on an AEO basis until closer to trial. However, in both of those cases, the defendants knew the substance and nature of the informants' statements; only the informants' names were withheld. *See United States v. Cobb*, 544 F. Supp. 3d 310, 330 (W.D.N.Y. 2021);[3] *United States v. DeLeon*, 2017 WL 2271427, at *65–68 (D.N.M. Mar. 8, 2017). Moreover, in both cases, the courts reaffirmed the general rule that "*Brady* information must be disclosed in time for its effective use at trial." *Cobb*, 544 F. Supp. 3d at 329; *see DeLeon*, 2017 WL 227147 at *39. Neither case endorses what the government proposes here: to

---

[3] Further, in *Cobb*, it appears to have been the *defendants* who requested the attorneys' eyes only designation for the informant's name, presumably because the informant's name made no substantive difference to the defendants' defense preparation. *See* Transcript of Oral Arg. at 49–50 (Dkt. 230), *United States v. Cobb*, No. 1:19-cr-00155 (W.D.N.Y. May 26, 2021).

withhold from the defendants ████████████████████████████████ far past the time at which the defendants can make effective use of the information at trial. *See infra* § I.C.

The government's reliance on CIPA (at 14–15) fares no better. In fact, CIPA cuts the other way. CIPA is a specific statutory scheme governing the handling of classified discovery in criminal cases. Here, as the government concedes, the disclosures at issue do not involve classified information. *See* Opp. 15. Moreover, the CIPA framework allows restrictions on discovery only to the extent those restrictions "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. App. 3 § 6(c)(1); *see United States v. Muhanad Mahmoud Al Farekh*, 2016 WL 4444778 at *2 (E.D.N.Y. Aug. 23, 2016) ("When the classified materials contain matter that is exculpatory or helpful to the defense, the Government's privilege must give way to a defendant's right to present a meaningful defense.") (cleaned up), *aff'd*, 956 F.3d 99 (2d Cir. 2020). But as demonstrated, withholding this information here would hinder Huawei's defense, since it would impede Huawei's ability to secure this evidence for trial. Neither CIPA nor the cases cited by the government support the notion that the government can withhold *Brady* information from the Defendants until it is too late to be used effectively at trial.

### C. Disclosure to the Defendants Three Months Before Trial Would Still Constitute a *Brady* Violation.

For Huawei to have the opportunity to use the information described in the February 2022 *Brady* Letter effectively at trial, at a minimum, Huawei must be permitted ████████████████████████████████████████████████████████████████████████████████████ The government concedes that the approval process alone will take far longer than the three months it has offered as a pre-trial deadline to downgrade the Letter from AEO to SDM. *Compare* Opp. 3 n.4 (government describing its three-month offer), *with* Opp. 13 & n.18 (government acknowledging that securing testimony for use at trial will take far longer than three months); *see also* Dkt. 441 (government asserting that "obtaining approvals from the PRC government may take significant time").

---



[4] ████████████████████████████████████████████████████████████████████████████████

The government asserts that Defense Counsel should be required to undertake all such efforts alone, without ever disclosing any of the AEO information to Huawei or to anyone else. But that cannot be done without greatly hampering the defense.

Take the first step in the process: ███████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████ Indeed, while the letter is dated February 7, 2022, the information in it was plainly collected ███████████████████ some significant time earlier; *i.e.*, it is unclear how long the government sat on this information before sharing it with Defense Counsel. It is therefore not only possible but also likely that ████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

The February 2022 *Brady* Letter also is likely to generate leads for additional investigation that could only be identified and pursued by the Huawei Defendants directly. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████ Under the government's proposal, the Huawei Defendants will effectively be deprived of the opportunity to pursue such investigative leads.



---

[5] ████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

[6] Huawei respectfully requests the Court's permission to file these two sentences *ex parte* because they could reveal work product and defense strategy. Consistent with the proposal below, *infra* p.9, we have provided the government with an explanation of the type of information for which we seek *ex parte* treatment. The government has advised that it does not oppose this request.

Finally, the government's hypothetical "Defense Counsel only" process fails to address



These are just some on the impediments that, absent prompt disclosure of the February 2022 *Brady* Letter to the Huawei Defendants, would preclude the effective use of the exculpatory information at trial. Defense Counsel's own experience suggests there would be more, some of which might not be evident until ███. And more broadly, a requirement that Defense Counsel hide from the Huawei Defendants information that is so central to their defense, while attempting somehow to recreate the same information ███, would likely undermine the trust and confidence that are essential to the attorney-client relationship. The Huawei representatives with whom Defense Counsel communicate are smart and insightful lawyers; there will be no way to keep ███ from them without dissembling or responding to their questions with half-truths or non-responsive answers. This could well lead to a schism in the attorney-client relationship that further undermines their preparation of a defense. *Cf. United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir. 2020) ("[T]he Sixth Amendment contemplates a norm in which the accused, and not a lawyer, is master of his own defense.") (cleaned up).

**D. The Government's Asserted "Witness Safety Concerns" Cannot Overcome Huawei's *Brady* Rights.**

The government devotes more than half of its opposition brief to describing its alleged concerns for "witness safety." *E.g.*, Opp. 10. Huawei disputes that the government's proffered information—much of which does not even involve Huawei—establishes good cause to believe that disclosure to Huawei of *any* information ███.[7]

---

[7] 

Regardless, for at least three reasons, the government's stated concerns cannot support withholding the February 2022 *Brady* Letter from the Huawei Defendants.

*First*, the government bases its concerns primarily on the notion



*Second*, as described above and in our opening motion, the February 2022 *Brady* Letter must be disclosed because it contains material, exculpatory information that cannot be effectively used without prompt disclosure to the Huawei Defendants. The law is clear that "*Brady* material must be disclosed in time for its effective use at trial." *See United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008); *accord* Dkt. 261. The facts clearly establish that effective use of the information at issue requires the prompt disclosure to the Huawei Defendants. No balancing of interests, therefore, can justify delayed disclosure. *See* Mot. 6–8.

*Third*, the government's arguments presuppose that someone from Huawei will violate the Protective Order and share this information with the Chinese government. Reality is to the contrary. The Protective Order was entered more than five years ago, and under its terms, Huawei employees have had access various sensitive information—███—for all of that time. The government has never suggested that Huawei employees breached the Protective Order or that ███. That is because Huawei and its Defense Counsel have taken its obligations under the Protective Order very seriously—demonstrated by, among other things, the extensive efforts taken by Huawei to modify the SDM restrictions to make them workable while still accommodating the government's concerns. *See* Dkt. 432. All of this effort is inconsistent with the government's unsupported speculation that Huawei is likely to circumvent the Protective Order's restrictions.

## II. The Court Should Reject the Government's Further Abuse of Improper AEO and *Ex Parte* Briefing.

The government has effectively served three versions of its opposition brief: (1) a heavily redacted public version, (2) an AEO version that withholds from the Huawei Defendants information found on 11 of the 17 pages of the document, and (3) an *ex parte* version that withholds even from Defense Counsel information found on 8 of the 17 pages of the document. All of this was done without any prior notice to Huawei or an opportunity for Huawei to respond, nor has the government explained why the redacted information required AEO or *ex parte* treatment. We respectfully ask the Court to order the below remedies to cure the prejudice caused to Huawei and to ensure future briefing will be conducted with proper respect to the adversarial process and to the public's right of access.

First, for future briefs, the government should be required to serve a redacted copy of any filing no later than the filing deadline. Here, the government's opposition was due on July 15, 2024. Despite that, the government unilaterally opted not to serve any copy of the motion on Huawei until four days later while the Court ruled on its motion for some parts to remain *ex parte*. This created a needless delay. There was no reason why the government could not have served a version of the brief on the filing date, with the parts it sought to seal (whether from the public, from Huawei, or from everyone except the Court) redacted, pending a ruling from the Court on its sealing request, just as Huawei is doing with this filing.

Second, the government should be required to provide a summary of the types of information that it has submitted to the Court on an *ex parte* basis and the grounds for that submission so that Huawei can challenge those designations if appropriate. *Ex parte* briefing is "highly disfavored" and rarely appropriate. *E.g.*, *Magee v. Walt Disney Co.*, 2020 WL 6047428, at *4 (S.D.N.Y. Oct. 13, 2020). *Ex parte* submissions are allowed "only in cases in which [1] there is a compelling need to maintain the secrecy of certain evidence, [2] no alternative means of meeting that need exist other than *ex parte* submission, and [3] the court carefully limits its sealing order only to materials genuinely implicating the compelling need." *United States v. Abuhamra*, 389 F.3d 309, 321 (2d Cir. 2004). Even where that heightened showing is made, due process requires that the defendant be advised of the grounds raised by the government to the extent feasible. *See id.* at 318. Here, Huawei remains entirely in the dark of what information has been kept even from its lawyers and why. We therefore ask the Court to order that the government disclose (1) a general summary of the information withheld from the defense, (2) an explanation for why disclosure at least to Defense Counsel on an AEO basis would be insufficient, and (3) whether the application for *ex parte* treatment was denied in any respect. Huawei further requests the opportunity to raise any objections in a reasonable time after receiving such disclosure.

Finally, the government designates large swaths of its opposition brief as AEO, but virtually none of the information redacted merits such treatment. ███████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████



There is absolutely no reason why this information should be treated as AEO. We therefore ask the Court to order the government to promptly provide an SDM version of its opposition that can be reviewed with Huawei.

\*   \*   \*

Huawei respectfully requests that the Court immediately de-designate the February 2022 *Brady* Letter from AEO to SDM, ███ Huawei also requests the Court take the steps described above to address the government's improper use of secret and *ex parte* briefing.

Respectfully submitted,

| /s/ Douglas A. Axel | /s/ David Bitkower |
|---|---|
| Douglas A. Axel | David Bitkower |
| Michael A. Levy | Matthew S. Hellman |
| Jennifer Saulino | JENNER & BLOCK LLP |
| Daniel Rubinstein | 1099 New York Avenue, NW |
| Ellyce R. Cooper | Washington, D.C. 20001 |
| Frank Volpe | Tel: 202-639-6048 |
| Melissa Colón-Bosolet | Email: dbitkower@jenner.com |
| SIDLEY AUSTIN LLP | |
| 787 7th Avenue | |
| New York, NY 10019 | |
| Tel.: 212-839-5300 | |
| Email: daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*